RECEIVED
IN ALEXANDRIA, LA
DEC 20 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

| | |
|---|---|
| KAREN ROBISON WOODARD | CIVIL ACTION NO. 03-2098 |
| -vs- | JUDGE TRIMBLE |
| JAMES ANDRUS, ET AL | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. # 60] alleging prescription, as well as a Motion for Summary Judgment [Doc. #66] concerning the issue of punitive damages, filed by defendants, James Andrus, et al ("Defendants"). For the reasons expressed below, both motions will be GRANTED.

## I. Background

Plaintiff Karen Robison Woodard ("Woodard"), the representative plaintiff in this class action, filed the instant suit on September 22, 2005, claiming that she, along with the other class-member plaintiffs, were overcharged for civil filing fees by the Clerks of Court in various parishes where these plaintiffs filed civil suits. Woodard claims that this wrongful act was committed in contravention of express statutory provisions setting the amount of such fees to be charged. Plaintiff further claims that such wrongful acts were a deprivation of her rights under 42 U.S.C. 1983.

The promulgation of LA. R.S. 13:750(C) is an intervening event in the history of this suit. The civil actions at issue in this motion were filed between 1999 and 2000. R.S.

13:750(C) did not become effective until August 15, 2004, at which time it set the prescriptive period for actions against clerks of court in Louisiana at four years.

Defendants in this matter are the Clerks of Court for each of the parishes in the state of Louisiana, as well as the Louisiana Clerks of Court Association. Defendants filed the instant motion for summary judgment on the basis that seven of the civil actions giving rise to plaintiff's claims herein were filed at such a time as to render the claims arising from them prescribed under applicable state law. Plaintiff alleges that these claims have not prescribed and that, in addition, the doctrines of *contra non valentum* and continuing tort apply to this case. Defendants second motion for summary judgment contends that plaintiff cannot recover punitive damages against defendants because such defendants are being sued in their public capacity. Plaintiff agrees that punitive damages against the individual clerks in their public capacities would be unlawful, but avers that punitive damage awards would be lawful as against the offices of the clerks of court, thereby opposing defendants' motion.

## II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *Stewart v. Murphy*, 174

*F.3d 530, 533 (5th Cir. 1999).*

In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *Anderson,* 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), the non-moving party must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Such evidence should create more than a metaphysical doubt about the material facts or should be more than a theoretical possibility that the claim is good. *Matsushita,* 475 U.S. at 586; *Pennington v. Vistron Corp.,* 876 F.2d 414, 426 (5th Cir. 1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1123 (5th Cir. 1988). The moving party need only point out the absence of evidence supporting the non-moving party's case, and it "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Allegations in the pleadings, naked assertions of factual disputes, and conclusory allegations are not sufficient. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195-96 (5th Cir. 1996).

### III. Discussion

#### A. Prescription

The central issue in the determination of defendants' motion on the subject of prescription is whether or not plaintiff's cause of action against defendants was prescribed at the time when LA. R.S. 13:750 became effective. Therefore, before we discuss the impact of that provision, we must determine what prescriptive period governed the cause of action in question.

Plaintiff's suit is based on 42 U.S.C. § 1983 and alleges the violation of her civil rights. This federal law does not contain its own prescriptive period and, as such, federal courts apply the state law of prescription governing an analogous cause of action, were it brought under state law. *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794 - 95, 64 L.Ed.2d 440, 446 - 448 (1980). This jurisprudence leads us to discern what prescriptive period would apply to the instant action were it to have been brought under Louisiana state law. Defendants contend that this suit, alleging a deprivation of rights under federal law, is most similar to a general tort and, therefore, Louisiana's one-year prescriptive period for general torts should apply. LA. CIV. C. ART. 3492; *Defendant's Motion for Summary Judgment* [Doc. 60] *at p. 4*. Plaintiffs argue that the overcharging of fees falls within La. Civ. C. Arts. 2299 and 2230, which concern payment of a thing not due. *Plaintiff's Memorandum in Opposition at p. 5*. Actions for payment of a thing not due are personal actions which, because they are not otherwise provided for, prescribe ten years from the date of payment or ten years from the date that plaintiff knew or should have known of the overpayment. LA. CIV. C. ART. 3499.

We find that neither of these assertions is correct. Instead, we find that the prescriptive period governing plaintiff's cause of action prior to the enactment of R.S. 13:750(C) was the one year liberative prescription assigned to actions against state officials. *Jones v. Orleans Parish School Board*, 688 F. 2d 342, 344 (5th Cir. 1982). While we note plaintiff's argument that this type of tort is more properly classified as payment of a thing not due, we find that jurisprudence within the Fifth Circuit clearly recognizes that the identity of the alleged tortfeasor as a state official is a determinative factor for the purposes of prescription. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980); *Proctor v. Flex*, 567 F.2d 635

*(5th Cir. 1978).*

We find that this jurisprudential rule works in harmony with the reasoning of other cases which, although by different means, achieve the same result. In *Prostar v. Massachi*, *239 F.3d 669 (La. 2001)*, the Louisiana Supreme Court held that courts must first "characterize the essence of the statute in question in order to determine which state cause of action is most analogous." Here, the claims are made under 42 U.S.C. 1983 and involve the deprivation of constitutional civil rights. Although the details of this tort may appear to mandate its classification as payment of a thing not due, we find that it is the classification of the <u>federal</u> statute which is to be examined against the backdrop of similar Louisiana torts. As noted in *Braden v. Texas A & M University System*, *636 F.2d 90, 92 (5th Cir. 1981)*, "liability under § 1983 is imposed for subjecting a person to the deprivation of rights secured by the Constitution and the laws of the United States...Therefore, the cause of action is in essence delictual." The Fifth Circuit also noted, in *Braden*, that "if the state had merely breached a contract with Braden he would have had no cause of action under Section 1983. Relief is predicated on a denial of a constitutional right." *Id at 93, citing Baker v. McCollan, 443 U.S. 137, 138 - 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).*

Applying this rationale to the instant suit, we find that the same result follows. Were plaintiff asserting a right against a civilian for payment of a thing not due, no federal cause of action would exist. It is the identity of the alleged tortfeasors which generates the federal claim. Accordingly, the federal statute under which the action is brought is the statute which is to be compared with similar state torts. We cannot, as advocated by plaintiff, focus on the nature of an underlying tort when the federal portion of the same tort is the very mechanism that brings the instant suit before us.

We, therefore, find that the essential nature of plaintiff's claim is that of the deprivation of constitutional rights under 42 U.S.C. 1983. As such, we find that, prior to the enactment of R.S. 13:750(C), Louisiana's one-year liberative prescriptive period applied, as the action alleges a wrong committed by state officials which deprived plaintiff of those rights.

We must now determine what effect the enactment of R.S. 13:750 had on the claims as to which defendants assert prescription. We begin with the general rules of legislative interpretation found in Louisiana's Civil Code.

LA. CIV. C. ART. 6 provides that

> "in the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."

The Louisiana Supreme Court held, in *Lott v. Haley, 370 So.2d 521 (La. 1979)*, that laws concerning prescriptive periods affect the remedy available under the law and, as such, are treated as procedural laws, which are applied retroactively. *Id at 523.*

The instant suit concerns LA. R.S. 13:750(C), which provides that

> "all claims against the clerk in his official capacity are extinguished four years after the act or occurrence first giving rise to the claim whether or not the basis for the liability is a continuing one. The prescription commences to run from the day the claimant acquires, or should have acquired, knowledge of the act or

occurrence first giving rise to the claim."

Considering the foregoing authority, we conclude that LA. R.S. 13:750 (C) is of the sort of law which we are to apply retroactively, as it concerns prescription of claims and, thus, impacts a remedy at law.

Although R.S. 13:750(C) is a law to be applied retroactively, it is clear that such laws do not revive prescribed actions unless such result is clearly and explicitly directed by the language of the legislation itself. *Chance v. American Honda Motor Company*, 635 So.2d 177, 178 (La. 1994). The statute before us has no such indicative language and, as such, we cannot construe it to revive claims which, at the time of its effect, were already prescribed.

The result, then, is that the seven suits enumerated in defendants' motion for summary judgment, prescribed before the August 15, 2003 enactment of LA. R.S. 13:750, were not revived upon that statute's advent.[1] Those suits which had not, as of August 15, 2004, prescribed were subject to an additional four year prescriptive period from that date and, as such, remain a part of the instant suit.

B. Continuing Violation

We find no merit in plaintiff's argument as to the classification of the clerks' overcharges as a continuing violation. As above, we do not find that the claims are susceptible to interpretation as payment of a thing not due and, as such, we cannot equate the

---

[1]Michael Wagner v. Audubon Insurance Co. - Ascension Parish - Suit No. 71210; Thomas Roque v. Patrick Jones - Natchitoches Parish - Suit No. 72189; Spencer v. Union Pacific Railroad Co. - Iberia Parish - Suit No. 95933; Jennifer Guillory v. Alex D. Guillory - Beauregard Parish - Suit No. 2002-0200; Companion Mtg. Corp. v. Alex David Guillory Jr. and Jennifer Guillory - Beauregard Parish - Suit No. 2000-0799; David Alex Guillory v. Jennifer Guillory - Beauregard Parish - Suit No. 0099-0942; Jennifer Guillory v. Alex D. Guillory, Jr. - Beauregard Parish - Suit No. 0099-0887; See Exhibits A - J to Defendants' Motion for Summary Judgment [Doc. # 60].

continued refusal of defendants to reimburse plaintiff to a continuing tort.

In *Crump v. Sabine River Authority*, 737 So.2d 720 (La. 1999), the Louisiana Supreme Court held that the failure of the Sabine River Authority to remove a canal (dug by a third party) from plaintiff's leasehold did not constitute a continuing tort such as to suspend prescription. The Court relied on several earlier rulings on this issue, as well as the scholarly writings of Professor Yiannopoulos, and reinforced the rule that the theory of continuing tort only applies when "the operating cause of the injury [is] a continuous one which results in continuous damages." *Id at 726.* The U.S. Fifth Circuit Court of Appeals has also spoken on this issue, echoing the findings of Louisiana courts, holding that the continuation of the harmful effects of a single bad act does not convert the cause into continuing tort. *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, (5th Cir. 2002).

In the instant case, the alleged tortious conduct occurred once, at the time the civil suits were filed. The lack of reimbursement of these funds is not a separate tortious act, but a continuation of the ill effects of the previously pled tort. As such, we do not find that continuing tort theory interrupted prescription in this case.

C. *Contra Non Valentum*

Prescription runs against all persons unless express exception is made. LA. C.C. ART. 3467. The party pleading interruption of prescription bears the burden of demonstrating the applicability of any interruption. *Terrebonne Parish School Board v. Mobil Oil Corp.*, 310 F.3d 870 (5th Cir. 2002).

Plaintiffs argue that the equitable doctrine of contra non valentum should apply in this case and that, as such, prescription did not begin to run until some later unspecified date.

*Plaintiff's Memorandum in Opposition at p. 6.* Plaintiffs did not provide us with any evidence that defendants concealed the existence of a claim for overcharges or hindered plaintiff's ability to file the instant suit in any other way. It is well established that mere inattention or negligence in ascertaining the existence of a claim is no trigger of the protections afforded under the doctrine of *contra non valentum*. <u>Nathan v. Carter</u>, *372 So.2d 560, 562 (La. 1979).*

Given the lack of supporting summary judgment evidence presented by plaintiffs who, again, bear the burden of proof as to *contra non valentum*, we find that there was no interruption of prescription in the instant case. Plaintiff was able, at any time, to compare the cost sheets provided by the clerks with the public law concerning such costs. The fact that she did not do so cannot be excused as an interruption of prescription.

D.   Punitive Damages

Defendants second motion for summary judgment [Doc. # 66] asks this Court for summary judgment in its favor as to the issue of punitive damages on the basis that defendant clerks are sued in their public capacity as state officials.

Plaintiff argues that, although punitive damages aren't appropriate as against a public official, the offices of the Clerks of Court could sustain such a judgment under Louisiana law because these offices do not collect taxes. We find no merit in this argument.

Defendants herein are the individual clerks of court, as well as the Louisiana Clerks of Court Association, and they are, necessarily, sued in their public capacities by virtue to 42 U.S.C. § 1983. Defendants correctly argue that no suit would exist without this public designation, as the statute in question mandates a state actor.

9

We also concur with defendants that punitive damages would not be, if levied, paid from the overcharges. The overcharges, if refunded, would be compensatory in nature. Punitive damages would come from other Clerk of Court funds which, as we have noted above, is not allowable by law. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

IV. **Conclusion**

We find that, based on the law, evidence and arguments before us, seven of the civil suits which give rise to claims in the instant suit prescribed one year from the date of the harm (the date the fees were overcharged) and, as such, the attendant claims of those suits are not properly considered in this suit. We further find that the theories of continuing tort and *contra non valentum* do not act as to interrupt prescription in this case. Finally, we find that no punitive damages may be assessed against the individual clerks who are sued in their public capacity.

Alexandria, Louisiana

December 20, 2006

JAMES T. TRIMBLE, JR.
U.S. DISTRICT COURT JUDGE