UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

KAREN WOODARD, ET AL.                    CIVIL ACTION

VERSUS                                    NO: 03-2098

JAMES ANDRUS, ET AL.

## ORDER AND REASONS

Before the Court is defendants' Motion for Summary Judgment on Due Process Notice (R. Doc. 409).[1]  For the following reasons, the motion is GRANTED.

## I. Background

As the Court has issued a number of orders in this case, the background will be summarized only briefly.[2]  This case presents a constitutional challenge to the fee-collection procedures used by the clerks of court in Louisiana parishes.  The clerks of

---

[1] The motion is styled as a "supplemental memorandum."  The Court, however, ordered the parties to submit the memorandum and to "assess whether summary judgment is appropriate in light of the legal standards discussed in the Court's Order of January 15, 2009."  R. Doc. 407.  The Court's January 2009 Order, R. Doc. 360, postponed ruling on a number of defendants' motions for summary judgment because their briefs did not focus upon the issue of whether the parishes provided constitutionally adequate notice.  *See* R. Docs. 206, 207, 208, 211, 212, 216, 217.  In that January 2009 Order, the defendants ordered the defendants to brief the issue of notice in order for the Court to rule on their summary-judgment motions, and this memorandum is the filing that defendants eventually submitted.  R. Doc. 360 at 43-44.  The Court therefore construes the memorandum before it as a motion for summary judgment.

[2] A more extensive background may be found at R. Doc. 360, which is also reported as *Woodard v. Andrus*, 649 F. Supp. 2d 496 (W.D. La. 2009).

court are elected officers in Louisiana with duties relating to the administration of the district courts and the recording of legal documents.[3]  At the relevant time, they were authorized by statute to collect seventy-seven different fees for their services to litigants in state-court lawsuits.  The statute indicates that "[t]he clerks of the several district courts shall be entitled to demand and receive [these seventy-seven fees] of office *and no more* in civil matters."[4]  The statute supplies a specific maximum charge that the clerks may "demand and receive" for each service.  For example, "[f]or endorsing, registering, and filing [a] petition," the clerks may charge two dollars.[5] But this two-dollar charge is a maximum, and the clerks are entitled to charge less than that amount.[6]  These fees are then placed into a fund that is used to defray the costs of the clerks' salaries and the capital and administrative expenditures of their offices.[7]

---

[3] *See* La. Const. art. V, § 28; La. Rev. Stat. § 13:751, *et seq.*

[4] The specific statute detailing the seventy-seven enumerated fees that could be charged by the clerks of court, La. Rev. Stat. § 13:841, has been amended since the conduct described in plaintiffs' complaint took place.  *See* 2006 La. Sess. Law Serv. Act. No. 243.  Unless otherwise specified, all citations to Louisiana statutes are to the pre-2006 statutes in effect at the time of the challenged conduct.

[5] La. Rev. Stat. § 13:841(A)(1).

[6] *Id.* § 13:841(A) (emphasis added).

[7] *See* La. Rev. Stat. §§ 13:841-50, 13:781-87.

When a litigant initiates a lawsuit in state court, the clerks are required to collect an advance deposit from the plaintiff, "to be disbursed to the clerk's salary fund or to others as their fees accrue."[8]  If the money in the plaintiff's deposit account is exhausted, "the clerk may refuse to perform any further function in the proceeding until the additional costs for the function have been paid."[9]  Finally, "[w]ithin 120 days after the final termination of the suit, the clerk shall either issue a refund to the plaintiff of any unused amount remaining in the cost advance or issue a demand for payment to the 'party primarily liable' for any amount in excess of the cost advance."[10]  The statutory structure of the clerks' fee-collection procedures thus contemplates that a litigant will provide an advance deposit of a certain amount to a clerk's office, and from that advance deposit actual charges for services will be deducted.  The refund procedure indicates that the actual charges assessed against the litigants can be less than the amount of the advanced deposit.

The named plaintiffs in this case were separately involved in litigation in the Louisiana district courts, and they paid

---

[8] LA. REV. STAT. § 13:842; *see also City of Monroe v. Lolley*, 660 So. 2d 94, 97 (La. Ct. App. 1995).

[9] LA. REV. STAT. § 13:842.

[10] *Meyers v. Basso*, 398 So. 2d 1026, 1028 (La. 1981); *see also* LA. REV. STAT. § 13:843.1.

3

fees to the clerks of court in the manner described above.  The present consolidated action alleges that the clerks of court in various Louisiana parishes assessed actual charges against them that were not authorized by Louisiana statute, or that the fees were in excess of those allowed by statute.  For example, the fee statute authorizes a three-dollar charge for "issuing [a] subpoena duces tecum, with seal" and a two-dollar charge for "issuing [a] copy of subpoena duces tecum, with seal and certificate."[11]  Della Gatzke, a named plaintiff who was a litigant in East Baton Rouge Parish, was charged $14.53 for the issuance of a subpoena duces tecum and subpoena for deposition in 2004.[12]  As another example, Gatzke was charged $26.60 for filing a pretrial order the previous year.[13]  The fee statute, however, makes no explicit mention of pretrial orders.  Plaintiffs thus claim that the clerks' actual practices bore little relationship to the amounts legally authorized by the fee statute.  Defendants claim that they actually have statutory authority to make these charges because other sections of the statute allow the assessment of fees for "recording" and "copying," and that these

---

[11] LA. REV. STAT. § 13:841(A)(24)-(25).  The statute also allows clerks in every parish except Jefferson Parish to impose an extra ten percent on top of the authorized fee.  *Id.* at § 13:841(D).

[12] *See* R. Doc. 331-14 at 5.

[13] *See id.*

sections allow the imposition of fees above the amount specifically listed in the statute.[14]

This suit, however, is not predicated upon state-law claims; it brings a constitutional due-process challenge under 42 U.S.C. § 1983.  In 2005, the Fifth Circuit held that plaintiffs had adequately pleaded a violation of the Due Process Clause.[15]  The precise nature of plaintiffs' due-process arguments, however, remained vague.  Their original argument appeared to be that the violation of state law itself was a violation of constitutional due process that could be challenged under § 1983, even though the Fifth Circuit's holding stated that a state-law violation was insufficient to make out a claim under that provision.[16]

Accordingly, in 2008 the parties filed numerous cross-motions for summary judgment, focusing primarily on whether the clerks' conduct violated the law of Louisiana.  This Court's January 2009 summary-judgment ruling, however, held that plaintiffs' focus upon state law was misplaced, and that the § 1983 challenge must be predicated on the United States

---

[14] *See, e.g.,* R. Doc. 386-1 at 8, 17-18; *see also* LA. REV. STAT. § 13:841(A)(5), (62).

[15] *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005).

[16] *Id.* at 353("a violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights").

Constitution or federal law.[17]  It then made several rulings on
plaintiffs' constitutional due-process claims.  First, relying on
Supreme Court precedent, it held that plaintiffs were not
constitutionally entitled to a hearing before each charge was
assessed.[18]  Among other reasons, such a determination would
place an impossible burden upon the clerks, who would then be
constitutionally obligated to conduct hundreds of thousands of
pre-deprivation hearings, each focusing on a minimal sum of
money.[19]

Second, the Court found that a constitutionally adequate
post-deprivation remedy was available.  The Louisiana Supreme
Court has concluded that after a civil suit concludes, a litigant
may file a motion to recover any unused deposits retained by the
clerks.[20]  Because a litigant has an adequate opportunity to be
heard if it feels aggrieved about the fees assessed by the
clerks, its due-process right to a hearing is satisfied.[21]

---

[17] R. Doc. 360 at 39-41; *see also Woodard*, 419 F.3d at 353.

[18] In so doing, the Court rejected plaintiffs' argument that
the Fifth Circuit's decision foreclosed entirely the possibility
of post-deprivation hearings simply because the *Parratt/Hudson*
doctrine did not apply.  Such an interpretation would have been
"wholly inconsistent with over one hundred years of Supreme Court
precedent."  R. Doc. 360 at 24, 28-30.

[19] R. Doc. 360 at 29-30.

[20] *Action Real Estate Ass'n v. Welborn*, 654 So. 2d 680, 681
(La. 1995) (per curiam).

[21] R. Doc. 360 at 34-39.

Finally, the Court determined that plaintiffs' only viable due-process challenge would be predicated on the notion that they did not receive constitutionally adequate notice regarding the fees assessed against them in their state-court suits.  Absent such information, it would be difficult for plaintiffs to make use of their post-deprivation hearing, as the plaintiff would not have sufficient information to present during that hearing.  The Court reserved ruling on defendants' motions for summary judgment and ordered additional briefing on the issue of constitutionally adequate notice.[22]  The parties have now briefed the issue, and the Court holds that defendants are entitled to summary judgment on the issue of notice.

## II. Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[23] When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but

---

[22] The delay between the Court's Order and the time when the parties' briefs were received is largely the result of prolonged and eventually aborted settlement discussions.  *See* R. Docs. 404, 405.

[23] FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

refrains from making credibility determinations or weighing the evidence."[24]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[25]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[26]  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[27]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in

---

[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

[25] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[26] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

[27] *Id.* at 1265.

the record is insufficient with respect to an essential element of the nonmoving party's claim.[28]  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[29]  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[30]

## III. Analysis

It again should be noted that this case involves related but distinct sets of issues.  Much of this case focuses upon the legality of the clerks' charges under Louisiana law.  But this case was brought under 42 U.S.C. § 1983 alleging violations of the Due Process Clause of the Fourteenth Amendment, and the Fifth Circuit held that plaintiffs properly stated a claim that their constitutional due-process rights were violated.[31]  The clerks' liability in this case thus depends on whether they provided adequate process under the Due Process Clause.  The issue of whether the clerks violated state law is a component of damages

---

[28] *See Celotex*, 477 U.S. at 325.

[29] *See id.* at 324.

[30] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

[31] *Woodard*, 419 F.3d at 354.

for any due-process violations they may have suffered.[32]   Thus, the Court will not reach the issue of whether plaintiffs suffered damages from fees assessed in violation of state law unless it is first determined that the clerks violated plaintiffs' due-process rights.   If the clerks provided constitutionally adequate procedures, the Court will not reach the issue of state-law legality because this case was brought under § 1983, and liability is thus predicated on federal constitutional issues, not state issues.

*A. Notice Standard*

In its January 2009 Order, the Court ordered the parties to address the issue of what notice was provided to the plaintiffs and whether that notice was sufficient under the standard articulated in the Supreme Court's 2002 decision of *Dusenbery v. United States*[33] and related cases.   Under that standard, state deprivations of property require "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[34]

---

[32] This distinction is explained in greater detail in the Court's ruling on plaintiffs' Motion to Amend and/or Sever.   *See* R. Doc. 466.

[33] 534 U.S. 161 (2002).

[34] *Id.* at 168 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

10

In *Dusenbery*, an inmate in federal prison whose property was seized during his arrest several years earlier filed suit to have this property returned to him.  This property, however, had already been declared administratively forfeited to the federal government.  The government had sent letters of its intent to forfeit the property to the federal prison where the inmate was incarcerated, to the address where he was arrested, and to an address where his mother had lived.  It also published notice on three consecutive days in a newspaper of general circulation in the jurisdiction where forfeiture was sought.  Having received no response within the time allotted, the government forfeited the property.[35]

The inmate later challenged the forfeiture on the grounds that he received inadequate notice.  The Supreme Court rejected the challenge and held that the notice was, in fact, reasonably calculated under all the circumstances to apprise the inmate of the action and afford him an opportunity to present his objections.  It stated that the government had demonstrated that it had sent the notice to the institution where the inmate was located, and that although records were unavailable, the prison had a procedure under which certified mail was signed for and provided to the prisoner-addressee.[36]  The Court made very clear

---

[35] *Id.* at 163-64.

[36] *Id.* at 165-66, 169.

that actual notice is not required.[37]   The Court further held that, although the inmate's location was known and the government could have made a special effort to ensure that he received the notice, "the Due Process Clause does not require such heroic efforts by the Government; it requires only that the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the action; 'the criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements.'"[38]   Because the notice was reasonably calculated to apprise the inmate of the proceedings, his due-process challenge failed.

The *Dusenbery* standard ultimately derives from the 1950 Supreme Court case of *Mullane v. Central Hanover Bank & Trust Co.*[39]   There, the Supreme Court noted that part of the essence of due process is the opportunity to be heard, but that opportunity "has little reality or worth" if the interested party receives no notice of the proceeding.[40]   The notice, therefore,

---

[37] *Id.* at 170 ("none of our cases cited by either party has required actual notice in proceedings such as this").

[38] *Id.* at 170-71 (quoting *Mullane*, 339 U.S. at 315) (internal punctuation omitted).

[39] 399 U.S. 306 (1950).

[40] *Id.* at 314.

12

> must be of such nature as reasonably to convey the
> required information, and it must afford a reasonable
> time for those interested to make their appearance.
> But if with due regard for the practicalities and
> peculiarities of the case these conditions are
> reasonably met the constitutional requirements are
> satisfied."[41]

The sufficiency of notice thus must be reasonable and depends on the information available to the government at the time.

*Mullane* thus establishes that the right to be heard — a fundamental component of due process — "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."[42]  Until January of 2009, the specific due-process challenge in this case was obscure.  The summary-judgment ruling the Court issued in that month, however, defined the remaining issue.  It noted that the Louisiana Supreme Court allows litigants to file a post-trial or post-dismissal motion requesting the return of any fees owed to them.[43]  The Court found this to be a constitutionally sufficient opportunity to be heard.[44]  Nevertheless, the Court, relying on *Mullane* and *Dusenbery*, stated that "[a]bsent notice, even the most robust

---

[41] *Id.* at 314-15 (internal citations removed).

[42] 399 U.S. at 314.

[43] *See* R. Doc. 360 at 34-39 (citing *Welborn*, 654 So. 2d at 681).

[44] *Id.* at 39.

13

refund procedures would be worthless because aggrieved parties would never become aware that they have a reason to use the procedures."[45]  At the time of that ruling, it did "not appear from the record that the plaintiffs had any way of knowing in advance of what charges could be deducted from their accounts." Unless state-court litigants are provided sufficient information to compare the actual charges assessed by a parish against the publicly available statute that details the maximum charge allowed by law, "it is difficult to see how the plaintiffs could have been expected to use the refund procedures that were provided for them."[46]

This is the specific aspect of notice at the heart of plaintiffs' due-process challenge.  "Fair or adequate notice has two basic elements: content and delivery.  If the notice is unclear, the fact that it was received will not make it adequate. . . . But unless received, the notice was inadequate unless the means chosen to deliver it was reasonable."[47]  These elements effect the purpose of notice under the Due Process

---

[45] *Id.* at 39-40.

[46] *Id.* at 41.

[47] *Fogel v. Zell*, 221 F.3d 955, 962-83 (7th Cir. 2000) (Posner, J.) (citing *Mullane*, 339 U.S. at 314, 318-19).

Clause, which is "to apprise the affected individual of, and permit adequate preparation for, an impending hearing."[48]

The "timing and content of the notice . . . will depend on appropriate accommodation of the competing interests involved."[49] In the January 2009 summary-judgment ruling, the Court determined that in order for plaintiffs' post-deprivation remedies to have any value, they must be given notice of the charges assessed against them.[50]  This information may be conveyed in a variety of

---

[48] *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978); *see also Matthias v. Bingley*, 906 F.2d 1047, 1052 (5th Cir. 1990) ("By requiring notice and an opportunity to be heard, the Due Process Clause permits persons whose interests may be adversely affected by government decisions to participate in those decisions.").

[49] *Goss v. Lopez*, 419 U.S. 565, 579 (1975); *see also Myers v. United States*, 647 F.2d 591, 603 (5th Cir. Unit A June 1981).

[50] R. Doc. 360 at 39-41 (citing *Mullane*, 339 U.S. at 314); *see also City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999) (when police officers seize property under a warrant, "due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return"); *Schroeder v. City of New York*, 371 U.S. 208, 214 (1962) (condemnation must be communicated to individual whose property is being condemned); *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008) ("the government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking"); Henry J. Friendly, "*Some Kind of Hearing*", 123 U. Pa. L. Rev. 1267, 1280-81 (1975) ("It is likewise fundamental [to a fair hearing] that notice be given and that it be timely and clearly inform the individual of the proposed action and the grounds for it.  Otherwise the individual likely would be unable to marshal evidence and prepare his case so as to benefit from any hearing that was provided.").

ways, none of which need be overly burdensome to the clerks.[51] But without adequate information that would allow a litigant to determine the amounts he or she may be owed under Louisiana law, any hearing over the validity of the charges would be a futile exercise. The question now is whether that information was conveyed in accordance with the standard announced in *Dusenbery* and *Mullane*.

The constitutional sufficiency of a particular method of notice must be made on a case-by-case basis,[52] and it requires the court to balance the "interest of the state" against the "individual interest sought to be protected by the Fourteenth Amendment."[53] The burden of demonstrating that the test of

---

[51] The Court's January 2009 ruling referred to "advance notice of what charges would be assessed for each activity and *ex post* notice of what charges were actually assessed." R. Doc. 360 at 41. This statement, which was included to illustrate the type of information that would clearly satisfy the due-process standard, should not be interpreted to mean that due process is lacking unless the clerks provide *both* advance notice of the charges that would be assessed *and* notice of the charges that were actually assessed. If the Court's earlier ruling suggested otherwise, that suggestion was in error.

[52] *In re Kendavis Holding Co.*, 249 F.3d 383, 386-87 (5th Cir. 2001); *see also Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162 (1951) (Frankfurter, J., concurring) ("'due process' cannot be imprisoned within the treacherous limits of any formula").

[53] *Jones v. Flowers*, 547 U.S. 220, 229 (2006) (quoting *Mullane*, 399 U.S. at 314).

*Dusenbery* and *Mullane* is met falls upon the government.[54]  The amount of the contested charges in this matter is, as a general matter, relatively small, and the clerks would not have needed to go to tremendous lengths to satisfy their constitutional obligations.

Again, defendants were ordered to address the question of whether plaintiffs were provided constitutionally adequate notice of the charges assessed by the clerks.  Defendants marshal several arguments in an attempt to answer this question, only some of which are ultimately relevant to the question.  First, they contend that the Louisiana fee statute itself provides constitutionally adequate notice.  Second, they argue that the practices in the parishes indicate that plaintiff had notice of the amounts that were to be submitted for each document filed in state court.

*B. Statutory Notice*

First, defendants contend that the fee statute itself provides sufficient notice to litigants.  Because the statute is published and generally available, citizens are charged with knowledge of its contents, and a litigant who brings a suit in Louisiana state court cannot claim ignorance of the statutes that regulate the fees chargeable by the clerks of court.

--------

[54] *Taylor v. United States*, 483 F.3d 385, 390 (5th Cir. 2007).

17

The Court's previous summary-judgment order rejected the argument that the fee statute, standing alone, satisfies the due-process notice requirement.  There the Court held that "[a]lthough the fee statute provides notice of the maximum possible fee for each chargeable activity, it does not provide sufficient notice of the actual fees because, as the parties agree, the clerks are free to charge any amount within the allowed range."[55]

To the extent that defendants ask the Court to reconsider this holding, their arguments are rejected for the same reasons articulated in the January 2009 Order.  It is undeniable that citizens are charged with knowledge of the laws that affect them.[56]  Accordingly, plaintiffs' claim that they did not receive constitutionally adequate notice would be barred if defendants demonstrated that the notice in question is "established by published, generally available state statutes and case law."[57] Thus, for example, plaintiffs would not be able to argue that their due-process rights were violated because they were not given specific notice of their post-deprivation remedy.  That information is freely available in case law, and any challenge

---

[55] R. Doc. 360 at 40 (citing LA. REV. STAT. § 13:841).

[56] *See Atkins v. Parker*, 472 U.S. 115, 131 (1985).

[57] *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999).

18

based on the clerks' failure to specifically inform litigants of its availability must be denied.[58]

In *City of West Covina v. Perkins*, for example, police officers acting under a valid warrant seized plaintiffs' property.  The officers informed plaintiffs what was taken, though they did not inform them of the state procedures under which the property could be returned.  In its due-process analysis, the Supreme Court held that "when law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return. . . . Individualized notice that the officers have taken the property is necessary . . . because the property owner would have no other reasonable means of ascertaining who was responsible for his loss."[59]  The officers, however, were not responsible for informing plaintiffs of any remedies they might use to have their property returned.  The Court noted that in its earlier cases in which statutes provided "post-deprivation state-law remedies" that were "public and available," the Court did "not conclude[] that the State must provide further information

_____

[58] *See* R. Doc. 360 at 34 (noting that an adequate post-deprivation remedy is provided as described in *Action Real Estate Ass'n v. Welborn*, 654 So. 2d 680, 681 (La. 1995) (per curiam)).

[59] 525 U.S. at 240-41.

19

about these procedures."[60]   Thus, plaintiffs have no due-process claim regarding a lack of notice of the availability of post-deprivation remedies that are established in the case law of the Louisiana Supreme Court.   Again, this was made clear in the Court's January 2009 Order.[61]

The heart of plaintiff's remaining due-process challenge, however, goes to whether they were sufficiently informed of the nature and amount of charges assessed against them to challenge those charges in a post-deprivation hearing.   The statute provides information only about the *maximum* fees under Louisiana law.   Information about the amounts actually charged is not available from the statute.   The parties do not dispute that the clerks may, consistent with Louisiana law, charge less than the

---

[60] *Id.* at 241; *see also Breath v. Cronvich*, 729 F.2d 1006, 1011-12 (5th Cir. 1984).   The case law establishes that statutory publication provides sufficient notice for due-process purposes when, unlike the individualized determinations here, the statutes are of general applicability and citizens have a reasonable opportunity to familiarize themselves with their contend and comply with the requirements.   *See United States v. Locke*, 471 U.S. 84, 108 (1985); *see also Atkins*, 472 U.S. at 129-131; *Texaco, Inc. v. Short*, 454 U.S. 516, 535-36 (1982); *County Line Joint Venture v. City of Grand Prairie, Tex.*, 839 F.2d 1142, 1143-45 (5th Cir. 1988).

[61] *See* R. Doc. 360 at 32 ("legislative determinations provide all the process that is due only when the resulting regulation *directly* effects a deprivation, such as when the legislature establishes a general tax or extinguishes a property right across the board") (emphasis in original).

amount set forth in the statute.[62]  The due-process challenge here focuses upon the notion that the post-deprivation remedy available to plaintiffs would be worthless unless they were able to assess for themselves whether the charges against them were assessed in violation of state law, and thus whether they would have any reason to use the remedies.[63]

Finally, defendants suggest that it would be absurd if due process were satisfied if the clerks always charged the exact amount dictated by the statute, but that it would be a due-process violation if they were to charge less.  This criticism misses the mark.  First, the clerks are statutorily authorized to charge less.  In so doing, however, they must provide constitutionally sufficient notice of the amounts charged to litigants.  Further, plaintiffs are not alleging that the clerks charged less than the amount authorized by statute.  Rather, plaintiffs allege that the clerks consistently charged more than was authorized by Louisiana law.  Defendants' argument therefore fails.

---

[62] *See* LA. REV. STAT. § 13:841 (noting that the clerks "shall be entitled to demand and receive the following fees of office *and no more* in civil matters") (emphasis added).

[63] *See Mullane*, 349 U.S. at 314.

21

*C. Constitutionally Adequate Notice*

It remains to be determined whether the summary-judgment record justifies a finding that defendants have complied with their obligations under the Due Process Clause by means other than or in combination with the statute.  Now, unlike in January of 2009 when it issued its previous summary-judgment ruling, the Court has a fully developed record on the notice issue.  This record has substantially informed the Court's understanding of how the fee-collection process operated and it permits conclusions to be drawn about the amount of information that state-court litigants had available to them when advancing fees to the Louisiana court system.

As an initial matter, the Court notes that the question of constitutionally adequate notice would be made vastly easier if the clerks were to inform litigants in their parishes of the actual charges that had been assessed against them during the litigation, for example by giving each litigant a list of actual charges at the conclusion of every case.  If litigants were informed of the precise amount of money they had been charged by the clerk during the course of each suit, there would be little question they would have sufficient information to make use of their post-deprivation hearings.  But it does not appear from the evidence that the clerks informed the litigations as a matter of course of the actual charges — as opposed to the amounts of the

22

deposits — assessed against them.  The Court must determine whether the information provided to them was sufficient to allow them to exercise their rights.

The summary-judgment evidence discloses that plaintiffs had a great deal of information available to them.  For example, defendants submit copies of correspondence from plaintiffs' state-court counsel and the clerks of court in Beauregard, Calcasieu, East Baton Rouge, Iberville, and Tangipahoa Parishes. These letters indicate what procedure or filing is being requested from the court and what amount of money is being submitted for each.  For example, one letter was sent on July 16, 2002, from the general counsel of Sabine State Bank, a litigant in the underlying state-court case numbered 2002-0621, to the Beauregard Parish Clerk of Court.[64]  That letter indicates that the Sabine State Bank sought to file an original petition for executory process, and the letter states that it includes a check "in the amount of $175, which I understand will be sufficient in covering the costs."[65]  It does not indicate how the author learned of this amount, but it establishes that the state-court plaintiffs knew to submit a specific figure for a specific procedure or filing.  This correspondence is generally

---

[64] R. Doc. 409-1 at 2.

[65] *Id.*

23

representative of that submitted for each of these five parishes.[66]

These letters are not exhaustive, nor is there a corresponding letter for each charge assessed against the plaintiffs during their state-court suits.  They do, however, indicate that plaintiffs were aware of how much money they were submitting as a deposit, and which specific filings or procedures they were submitting the funds for.  Plaintiffs agree that the amounts listed in the correspondence refers to advanced deposits, and they do not dispute that they were aware of these amounts.[67]

Defendants' evidence also suggests that these five parishes also published their fees in the annually-issued Louisiana Legal Directory.  This directory provides information about the fees and advance costs that are required for various filings and procedures in the courts of each parish.[68]  It appears that, for the most part, the amounts listed are for advanced deposits and not for the actual charges themselves, and none of the listings appears to give a comprehensive account of all the available charges that could be assessed by each clerk.[69]  Nevertheless,

_____

[66] *See generally* R. Doc. 409-1.

[67] R. Doc. 415 at 11.

[68] *See generally* R. Doc. 409-2 at 51-93 (Louisiana Legal Directory for 2003-2006).

[69] The information listed for Beauregard Parish, for example, is particularly scanty.  *See* R. Doc. 409-2 at 52 (2003

the information suggests that the clerks provided, by publication, additional information about the amounts that would be requested from plaintiffs for specific services and filings.

In addition, defendants provide more specific information about the notice practices in Caddo and Jefferson Parishes than they do about the other defendant parishes in this case. According to the evidence presented, the Caddo Parish Clerk of Court produces a "cost card" that provides the fee schedule for advanced deposits.  These cards are displayed in the clerk's office, and since at least the 1970s the clerk has also mailed copies of the cards annually to all the registered attorneys in Caddo Parish.[70]  The cost cards clearly refer to advance deposits and not necessarily to the actual fees assessed, and defendants present evidence that the fees indicated on the cost sheets are "within a few dollars" of the actual fees that will be assessed.

In addition, since 1995 the Caddo Parish Clerk of Court has maintained a website upon which a "Deposit Schedule" is posted. An affidavit from the Chief Deputy Clerk from the office states that "[t]he deposits are calculated to be as close to the actual charge as possible.  The deposits generally are within a few

---

Directory), 62 (2004 Directory), 72 (2005 Directory), 83 (2006 Directory).

[70] R. Doc. 409-1 at 31-32.

25

dollars of the actual costs associated with the filing, including service fees."[71]

Caddo Parish also maintains a "remote access service" on its website that includes records for all cases since January 1984. It is not clear how long this service has been maintained. "Each suit record accessible by the remote access service includes a case-specific cost sheet that itemizes all advance deposits and costs that have been paid, as well as each individual charge that has been assessed by the clerk."[72] This service is available for a small fee, and the Chief Deputy Clerk estimates that "70% of all attorneys in Caddo Parish subscribe to and have around-the-clock-access" to the service.[73]

Similarly, the Jefferson Parish Clerk of Court drafts a fee schedule pamphlet entitled "Schedule of 24th Judicial District Court Civil Advance Deposit Costs & Filing and Other Fees." An affidavit from an administrative assistant from the clerk's office states that this schedule "provides [a] detailed and comprehensive listing of the various costs and fees associated with the filings, and is updated as changes in fees require." It also "includes information about how costs are apportioned,

---

[71] *Id.* at 32.

[72] *Id.* at 32-33.

[73] *Id.* at 33.

26

including advanced deposits."[74]  The amounts listed on the cost sheet generally correspond with the amounts actually charged by the Jefferson Parish Clerk of Court.  These schedules are displayed on the counter in the clerk's office where civil filings are made, and have been available for taking free of charge since 2002.[75]  Furthermore, if a litigant or attorney seeks to file a document in person at the clerk's office, the clerk would review the cost sheet for the suit to determine whether the litigant's account contains sufficient funds to cover the costs and, if it did not, the clerk would notify the individual of the amount necessary to cover the cost of the type of filing submitted.[76]

In addition, the Jefferson Parish Clerk of Court maintains a website upon which a list of the filing fees are available to anyone with internet access.  Finally, since January 2003, the parish has maintained a remote access service available through its website.  On this service individuals may access case records that include case-specific cost sheets that "itemize[] all advanced deposits and costs that have been paid, as well as each

---

[74] R. Doc. 409-2 at 24.

[75] *Id.* at 44.

[76] *Id.*

individual charge that has been assessed by the clerk."[77]   This access is available to anyone for a "nominal fee."

The Court holds that this information supplied by the clerks, combined with the information that is freely available in the Louisiana statutes and case law, provides reasonably adequate notice to a litigant of the charges against him or her such that the litigant would be able to prepare for and take advantage of a post-deprivation hearing.   It appears that these parishes do not routinely provide every litigant with a list of the actual costs assessed against the court costs they deposited.   The due-process inquiry, however, is a flexible one that corresponds to the specific factual context.[78]   In addition, the Court must examine the individual's interest to be protected by the Fourteenth Amendment in light of the interest of the state.[79]   Here, the individual plaintiffs' property interest that is protected by the Fourteenth Amendment is a relatively small amount of money.   In contrast, the state's interest is in collecting fees that support the administrative costs of the clerks' offices, and doing so in an efficient and uniform manner that applies to hundreds of thousands of state-court litigants every year.   Accordingly, the

---

[77] *Id.* at 25.

[78] *See Kendavis Holding Co.*, 249 F.3d at 386-87; *McGrath*, 341 U.S. at 162 (Frankfurter, J., concurring).

[79] *Jones*, 547 U.S. at 229 (quoting *Mullane*, 399 U.S. at 314).

clerks need not go to tremendous or "heroic" lengths to ensure that the litigants have sufficient information to make use of their post-deprivation hearings.[80]  They simply must ensure that notice is reasonably calculated under all the circumstances to afford the litigant a chance to prepare and present its case at a hearing.[81]

By virtue of the publicly available statutes and case law, a state-court litigant has a baseline of information before any is supplied by the clerks.  First, as noted, a litigant is aware of the types and maximum amounts of charges that may be assessed under Louisiana law because the statute so specifies.[82]  Second, a litigant is aware that the clerks employ a system under which deposits are requested and then actual fees are deducted from

---

[80] *Dusenbery*, 534 U.S. at 170-71.

[81] *See id.* at 168 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306, 314 (1950)).

[82] *See* LA. REV. STAT. § 13:841.  There is little dispute that the version of the Fee Statute at issue is complicated and difficult to construe.  Plaintiffs do not suggest, however, that it is vague, ambiguous, or arbitrary in and of itself; in fact, their challenge is that the maximum amounts that may be charged under the statute are determinable and that the clerks regularly exceeded them.  Accordingly, plaintiffs have knowledge of the maximum fees that may be charged consistent with Louisiana law. *See, e.g., N. Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925) ("All persons are charged with knowledge of the provisions of statutes and must take note of the procedures adopted by them").

those deposits.[83]  This is because individuals with property in a state "are charged with knowledge of relevant statutory provisions affecting the control or disposition of that property."[84]  The litigant knows, accordingly, that some of the money deposited is subject to deprivation.  Third, a litigant is aware that, after the suit has concluded, the clerk of court is statutorily obligated to "[r]efund to the plaintiff or plaintiffs any unused balance remaining in the clerk's advance deposit fund to the credit of the particular suit."[85]  Fourth, a litigant is aware that, if the clerk does not refund the excess, he or she is entitled to file a motion with the court requesting an order that the clerk of court make the refund.[86]  In addition to this

---

[83] *See* LA. REV. STAT. § 13:842; *Meyers v. Basso*, 398 So. 2d 1026, 1028 (La. 1981).

[84] *Breath v. Cronvich*, 729 F.2d 1006, 1011 (5th Cir. 1984) (citing *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)).

[85] LA. REV. STAT. § 13:843.1.

[86] *Welborn*, 654 So. 2d at 681.  The Court has found nothing to indicate that this procedure contains a limitations period, in that a litigant who filed such a motion even after an unusually lengthy case would be barred from recovering excess costs that were assessed at the beginning the litigation.  Plaintiffs, in their response to defendants' motion for summary judgment, express concern that defendants did not inform them about the limitations period for their actions.  *See* R. Doc. 415 at 2-3 & n.2.  This limitations period affects new *lawsuits* and does not appear to apply to the motion procedure discussed in *Welborn*.  Furthermore, that certain claims are barred by a statute of limitations does not present an issue of constitutionally adequate notice, because those periods are generally available from statutes and case law.  *See N. Laramie Land Co.*, 268 U.S. at 283; *Woodard v. Jones*, 247 Fed. App'x 494 (5th Cir. 2007); LA.

baseline information, a state-court litigant or his or her lawyer knows how much money has been deposited and which types of filings have been made with the clerk over the course of the case.

On top of this, defendants have presented evidence that plaintiffs either knew of specific amounts that they would need to submit as advanced deposits for various procedures, or that there were publicly available listings, such as the Louisiana Legal Directory, the Caddo Parish cost card, or the Jefferson Parish cost pamphlet, that specified what sum should be submitted as an advance deposit for what corresponding procedure.  In Jefferson and Caddo Parishes, in addition, for a fee a litigant could take advantage of a computer system that would allow access to a list of actual fees assessed in a particular case.  Finally, in at least five of the seven defendant parishes, litigants could specifically request a copy of the cost sheet in their individual cases.[87]

On the facts in this case, the Court finds that the litigants were presented with sufficient information to make use of their post-deprivation hearings.  Specifically, a state-court

---

REV. STAT. § 13:750.

[87] *See* R. Docs. 206-1 at 1 (Caddo Parish); 207-1 at 1 (Tangipahoa Parish); 208-1 at 1 (Iberville Parish); 212-1 at 1 (Beauregard Parish); 216-8 at 2 (Jefferson Parish); 237-1 at 2 (Jefferson Parish).

litigant would know which filings and procedures he or she requested in the case and the amounts advanced to the clerks, and she would be able to determine from the statute the maximum allowable fees that could be charged under Louisiana law for each.  A comparison of the total amount authorized by the statute for the services obtained compared to amounts actually advanced would indicate whether the litigant was overcharged and entitled to a refund.[88]  Indeed plaintiffs' theory is that the statutory amounts are the maximum allowable under the law, so any charges above these amounts would be refundable in a post-deprivation hearing.  It cannot be said, based on the evidence presented and the information available to plaintiffs, that their post-deprivation hearing had "little reality or worth" because they received insufficient notice.[89]  Plaintiffs, for example, had sufficient information to file this lawsuit to recover fees that were allegedly assessed without statutory authority.

It is true that the clerks did not provide advance notice of the costs that would actually be assessed in a state-court proceeding or routinely provide a list of charges that had actually been assessed at the end of the case.  Providing this

---

[88] This is especially true when the costs are handled by lawyers who practice in the jurisdiction and are presumably familiar with the practices and customs of the local clerk's office.

[89] *Mullane*, 399 U.S. at 314.

32

information would be the optimal way of providing notice to a litigant who needs to know whether to assert in a post-deprivation hearing that he or she was assessed improper fees. The Court holds, therefore, that given the considerable information already available to state-court litigants, the clerks had no constitutional obligation to provide these specific forms of information.

The Court has scoured the case law and has found no authority that might establish that, in a circumstance such as the one presented in this case, the state has a constitutional obligation to supplement the considerable information available to state-court litigants.  Plaintiffs have provided no such authority for the rule they seek.  The case law that does exist supports the conclusion that the plaintiffs in this case had adequate notice to make use of their post-deprivation hearing. In the Eleventh Circuit case of *Arrington v. Helms*,[90] for example, a group of child-support recipients challenged the notice practice of the Alabama Department of Human Resources in handling child-support payments.  The Department's responsibilities included the collection and distribution of child-support payments, and certain withholdings and calculations were made to determine the amount of each payment.[91]  The

---

[90] 438 F.3d 1336 (11th Cir. 2006).

[91] *Id.* at 1338-39 (providing overview of program).

plaintiffs asserted that the notice attached to the check that was sent to them monthly did not allow them to assess the accuracy of the payments.  These notices sent by the Department, they contended, failed to provide adequate information about the payments that would "allow a parent to understand the distribution of each child support collection and to identify possible errors in distribution and delays in disbursement."[92]  Because of this, the plaintiffs argued that they could not determine whether the state had deprived them of their payments.

The court, applying the *Mullane* standard, found that the notice contained certain figures, which included the amount that the non-custodial parent was legally obligated to pay, the amount that had been paid to current, and the amount paid to the family.  The Eleventh Circuit concluded that this information could be used to calculate whether the deductions and withholdings were properly made and whether the amount of the payment was accurate.[93]

Litigants in Louisiana courts may have had to keep track of the amounts of court costs advanced for various filings, and additionally may have had to compare these figures to the amounts authorized by the fee statute.  This consideration, however, does not rise to the level of a constitutional violation.  As in

---

[92] *Id.* at 1349.

[93] *Id.* at 1350.

34

*Arrington*, the litigants in this case had sufficient information to determine whether a refund was due to them even if this information had to be determined from other figures.  Indeed, as noted, plaintiffs had sufficient information to file this lawsuit.

Furthermore, the *Arrington* court held that, if a child-support recipient was still confused about the calculations, he or she was able to contact the Department for assistance, which added to the amount of information available to the recipients.[94] This holding — that the availability of additional information is a relevant consideration in analyzing whether the state has satisfied its due-process burden — is consistent with the holdings of other courts.  For example, the Seventh Circuit in *Horn v. City of Chicago*[95] entertained a challenge to the notice provided by parking tickets issued in Chicago, which allegedly failed to inform the recipient of the amounts they were actually required to pay and the process for contesting them.  The court held that the tickets conveyed all the notice constitutionally due, and that "[a]ny doubts could have been resolved by contacting the Department of Revenue at the number or address listed" on the ticket.[96]  Finally, in the 1984 case of *Breath v.*

---

[94] *Id.*

[95] 860 F.2d 700 (7th Cir. 1988).

[96] *Id.* at 705.

35

*Cronich*[97] the Fifth Circuit upheld the procedure by which the Jefferson Parish Sheriff's Office notified individuals that their vehicles had been towed because of parking violations.  After towing a vehicle, an employee of the Sheriff's Office would attempt to telephone the owner, and depending on which lot the vehicle was towed to, the Office might attempt to send the owner a postcard.[98]  But the "[m]ost important" procedure, according to the Fifth Circuit, was that a vehicle owner who contacts the police to report that his car has been stolen is informed that it has in fact been towed.  Such procedures satisfied the standard of constitutionally adequate notice.[99]

The availability of additional information upon request does not, of course, relieve the state of its constitutional obligation to provide notice.[100]  These cases demonstrate, however, that the availability of additional information upon request is a consideration in the fact-specific calculus of whether plaintiffs had adequate notice to exercise their rights.

---

[97] 729 F.2d 1006 (5th Cir. 1984).

[98] *Id.* at 1009.

[99] *Id.* at 1012.

[100] *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983) ("a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation"); *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883, 890 (5th Cir. 1989) (state may not shift burden of requesting notice to individual).

Litigants in Louisiana state courts could gain more information by contacting the clerk's office.  The contact information for the clerks' offices is, of course, a matter of public record.  Furthermore, the record discloses that in numerous parishes, a litigant could contact the clerk's office and receive a breakdown of the costs paid in his or her specific case.  In Caddo and Jefferson Parishes a litigant could gain access to a database that provided the same information.  In addition to the information provided to state-court litigants that would allow them to make use of their post-deprivation hearing, the availability of further information upon request contributes to the state's satisfaction of its constitutional obligation to provide notice.

The *Arrington* court, in its analysis, remarked that its "task is not to determine whether the notice [given to the plaintiffs] would be *ideal* under all the circumstances, but rather whether the notice they currently receive is *reasonable* under all the circumstances."[101]  So too here.  Defendants in this case have provided adequate notice that would allow plaintiffs to prepare for and make use of their post-deprivation remedy, and they are thus entitled to summary judgment on plaintiffs' due-process claims.

---

[101] 438 F.3d at 1350 (emphasis in original).

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment as to constitutionally adequate notice is GRANTED.

New Orleans, Louisiana, this ___12th___ day of May, 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE